## SOFO v. THE B. R. BAKER CO.

*Bailments—Automobile imprisoned and padlocked to collect parking charges—Bailment cannot be created without chattel owner's notice or consent—Charge to jury—Negligence —Landowner seizing automobile liable for injuries to car owner—Negligence in attempting to operate padlocked car, no defense, when.*

1. Where owner of automobile was unaware by ordinary use of steering wheel that automobile was padlocked to collect parking charges, and was injured in attempting to back car from narrow and dark alley, charge that defendants could imprison car and deprive owner of its use without his consent by padlocking it and taking possession and control as for lien for payment of parking charge or as penalty for wrongful parking *held* erroneous and prejudicial.

2. Bailment cannot be created, in absence of notice or consent by owner of chattel.

3. Where purpose of defendant landowner in padlocking plaintiff's parked automobile was to take temporary possession and control, and method used was perilous to plaintiff, his negligence in undertaking to operate it without notice of defendant's act *held* no defense.

(Decided October 11, 1926.)

ERROR: Court of Appeals for Cuyahoga county.

*Messrs. Payer, Winch, Minshall & Karch,* for plaintiff in error.

*Messrs. Howell, Roberts & Duncan,* for defendant in error.

SULLIVAN, J.   This cause comes into this court on error from the municipal court of the city of Cleveland, wherein a judgment was rendered for

the defendant below, the defendant in error here, the B. R. Baker Company. An examination of the pleadings and record shows that the action is one for the recovery of damages for personal injuries by reason of the alleged willful acts of the defendant. It appears that plaintiff is an employe of the Wurlitzer Company, the rear of whose premises on Euclid avenue is adjacent to the rear of the store operated by the B. R. Baker Company, also located on Euclid avenue, and that on the morning of November 21, 1925, the plaintiff drove to work in a Ford coupe, together with another employe of the Wurlitzer Company. There is evidence tending to show that he parked his car immediately in the rear of the Wurlitzer Company's store, where he was employed, the same being the parking space used daily, and reserved for employes of that store. The alley is 30 feet wide, and is used generally for parking purposes for employes and others connected with the stores fronting on Euclid avenue. There is evidence tending to show that plaintiff discovered at the noon hour that the car had been removed from where he had left it in the morning, and, after a search, found it in the rear of the premises adjacent, known as the B. R. Baker Company's property, and about two doors west of the Wurlitzer store. Thereupon he entered his car on the right, started in reverse, and was halted by a violent jerk, which tore the steering wheel from his grasp and hurled him with violence against it. He claims that thereby he sustained severe injuries to his chest, ribs, and arm, and this evidence is not seriously contradicted by the record. Upon examination it was then and there discovered that a

chain, the size of a tire chain, and some 22 feet in length, extended from his left front wheel up through the left-hand door of his car, and was wound twice around the steering wheel. This chain was securely padlocked. There is evidence tending to show that this chain and lock contrivance was the work of the servant of defendant company, performed under the authority and with the knowledge of certain officers of the company. Upon demand, the plaintiff was met with a refusal to release his car unless he paid a parking charge of $1, which was demanded, as was to be observed upon a movable sign to that effect erected to attract the attention of the employes of defendant's store. The car, however, was released late in the afternoon, and subsequently this action was begun on the theory that the injuries resulted from the willful tort of the defendant.

It appears from the record that the plaintiff was unaware of the padlocking of his car and of the chain connecting the steering wheel with the left wheel of the car, until after the occurrence of the accident and infliction of the injuries, and that the existence of the chain and its purposes could not have been ascertained by the exercise of ordinary care. If the chain had been around the wheel or rim of the steering wheel, it is obvious that before use of the wheel a knowledge of its presence would have been inevitable, as it would be necessary for the hands to use the rim of the wheel in order to guide the machine, but it appears that the rim itself was free and clear of the chain, so that, unless the chain were seen, its presence could not have

been ascertained by the ordinary use of the wheel in the operation of the car.

One point seems clear from the record, and that is that the principle of self-preservation would have prevented operation of the car had the driver known of the contrivance connecting the steering wheel with the wheel of the car, and of the padlocking of the chain. There was also evidence tending to show that the alley was narrow and dark by reason of the high walls shutting out the light from the sky, which condition has some bearing upon the question whether plaintiff had knowledge of the presence of the chain in the car.

Bearing upon this state of facts, the court, among other instructions, charged as follows:

"But, if, on the contrary, you find from the evidence, if you can assume from the evidence that he placed the car there, or left it in a place on those premises, then they had a perfect right to put the chain and lock on there, providing they had notice there that it was private property and that they charged and would charge for parking their cars there they had a right to collect   *   *   *.

"Now, if you find from the evidence, as I say you have a right to do, if you find from the evidence that they have complied with the law in that regard, your judgment should be for the defendant in that event. On the other hand, if you find that he did not park his car there, as I have said, and that somebody unknown to him pushed his car in there, then you will go further and inquire as to whether or not he had knowledge of the chain having been placed upon that car, and, if you find that he did have knowledge, or in the exercise of ordi-

nary care should have known that the chain and lock were placed there, then you would go no further, and you would have a right to return a verdict for the defendant. But, if you find that in the exercise of ordinary care he could not have seen that chain and lock there, and that he had no knowledge and no notice of it and he got in there and started his car, then you would be warranted in finding a judgment for the plaintiff.''

We think this instruction was erroneous and prejudicial to the rights of the plaintiff. That the defendant had a right to charge and collect the fee stipulated by it for parking privileges, there can be· no question, and perhaps it had a right, in a reasonable way, to remove said car to the adjacent premises, inasmuch as it appears from the record that the defendant in error had some knowledge of a previous attempt of plaintiff to park his car on defendant's property, but to say that the defendant, in addition to above right, could imprison the car and deprive the owner of its use, without his consent, by the contrivance of the chain and padlock, and thus take possession and control of the property, as in the nature of a lien for the payment of the parking fee, or as a penalty because of the wrongful parking on private property, is to assume a position not tenable in the law, for without the consent of the owner of the car, or operation of the law, as where one who repairs a car has a lien for payment, this would be creating a bailment, which cannot be done in the absence of any notice or consent on the part of the owner.

This principle, we think, is laid down in *B. & O. Rd. Co.* v. *Campbell*, 36 Ohio St., 647 (38 Am. Rep.,

617), in the second proposition of the syllabus, as follows: "Words on a railroad ticket or baggage check limiting the liability of the carrier to a specific amount for loss of baggage are not binding on a passenger, unless, with knowledge of such limitation, he agrees to it."

There is a similar holding in *Union Depot Co.* v. *Ulrich,* 22 N. P., (N. S.), 141, 29 O. D. N. P., 564, affirmed by the Court of Appeals of Franklin county.

It is to be noted that the action with respect to the chain preceded any attempt to collect the parking fee, or any refusal to pay the same. The status for the application of the law must apply to the time when the car was chained to prevent its use or operation by the owner.

With this view of the record, we are of the unanimous opinion that there is error prejudicial to the plaintiff in the instructions above quoted.

It appears that the use and purpose of the chain, in the manner set forth in the record, was to take temporary possession and control of the car, and the method was in and of itself perilous to the owner of the car when undertaking to operate it without notice of the act of the defendant.

We think that this situation makes the case of *Payne, Director General,* v. *Vance,* 103 Ohio St., 59, 133 N. E., 85, applicable. The fourth proposition of the syllabus reads as follows: "When defendant's conduct amounts to wilfulness, and when injury is occasioned by his conscious wrongdoing, the plaintiff's negligence is no defense."

To the same effect are *C., C., C. & I. Ry. Co.* v.

*McLean,* 1 C. C., 112, 1 C. D., 67, and *Nypano Rd. Co.* v. *Blose et al., Admrs.,* 2 Ohio App., 284.

The instructions given by the lower court, above quoted, with respect to contributory negligence, are, we think, under the record in this case, in direct conflict with these authorities. It must be noted that as to the use and purpose of the chain there is no conflict in the evidence, and thus it is not difficult to reach the conclusion, under the record, that the presumption of law makes the act a willful tort.

Holding these views, it is the unanimous judgment of this court that the judgment of the lower court be, and the same hereby is, reversed, and the cause remanded for further proceedings according to law.

*Judgment reversed and cause remanded.*

LEVINE, P. J., and VICKERY, J., concur.